## Case No. 7,730.

### KERR v. FORCE.

[3 Cranch, C. C. 8.] 1

Circuit Court, District of Columbia. Dec. Term, 1826.

PLEADING AT LAW — CONSTRUCTION OF LIBELOUS WORDS—PLEA OF JUSTIFICATION—CONSTRUCTION OF AVERMENTS IN PLEA — EFFECT OF ISSUE JOINED — DEMURRER TO PLEA — JUDGMENT NIL DICIT — LIBEL — CHARGE OF CRIME — MORAL OBLIQUITY.

1. In an action upon the case for a libel, if the plaintiff avers that the words amount to a charge of forgery; and if the words under the circumstances stated in the declaration, are capable of that construction, the defendant, if he would justify, must in his plea justify the words to that extent, and show in his plea, a clear case of forgery.

2. Whether the words are, under the circumstances stated in the declaration, capable of such a construction, is a question of law to be decided by the court.

3. Whether the defendant used them in that sense, and intended thereby to charge the plaintiff with forgery, is a question of fact, arising upon the plea of not guilty, and exclusively to be decided by the jury upon all the circumstances in evidence before them. This question cannot arise upon the issue joined upon the plea of justification, because, by joining issue, the plaintiff has admitted the plea of justification to be good, if true.

4. The rule for construing words in a libel, differs from the rule for construing averments in a plea. In the former case, the rule is that the words shall be understood by the court and jury in that sense which the author intended to convey to the minds of his hearers as evinced by all the circumstances of the case; but the rule of construction as to pleas, and especially as to pleas in justification of libel, is, that they shall be taken most strongly against the party pleading; and that a man shall not justify by intendment; but every thing must be precisely alleged.

5. The court, in considering a plea, cannot infer one fact from another, as a jury may, but

1 [Reprinted by permission.]
2 [District not given.]

1 [Reported by Hon. William Cranch, Chief Judge.]

is as much restricted to the precise facts, as it is in considering a special verdict.

6. A plea in justification of libel must be "certain to a certain intent in general." It is, therefore, not true that a reiteration, in the plea, of the words, contained in the libel, with an averment that they are true, will be a good justification, unless the words of the libel should be so precise as to contain within themselves every thing that can be inferred from them.

7. The matter alleged in the justification to be true, must in every respect, correspond with the imputation complained of in the declaration.

8. In order to ascertain what is the imputation contained in a libel, the court must understand the words in the sense in which they think the writer intended they should be understood by those who should read or hear them.

9. If a man, in a libel, says that he believes that another person committed a certain crime, his belief, although sincere, is no justification.

10. It is actionable in a libel, to charge the plaintiff with fraudulently deceiving a person as to a fact so as to induce him to indorse a note for a larger sum than he intended.

11. In considering the language of a plea in justification, the court is not at liberty to exercise the same latitude of construction and inference as it may in considering the words of a libel. It is not permitted to draw any inference of fact from the facts stated in the plea.

12. If the libel charge the plaintiff with devising slanderous accusations against a person, the plea in justification is defective if it does not aver that the plaintiff did devise slanderous accusations against him; and if it does not set forth the particular accusations devised.

13. If the libel charge the plaintiff with moral obliquity, the plea in justification is defective if it does not set forth any acts of moral turpitude.

14. The expressions "unfairly and secretly computed," "unjustly and unfairly attempted," and "artfully and purposely framed," used in a plea of justification, and in regard to the official act of a cashier, do not necessarily imply moral obliquity.

15. Upon leave given to the defendant to amend his pleadings, the court will not receive pleas in justification, which do not contain a justification of what they profess to justify.

16. Where the plea professes to answer only a part of the actionable matter charged in the count, if the plaintiff, by his replication or demurrer, treat it as a plea to the whole matter, it is a discontinuance. But if the plaintiff, by his replication or demurrer, treat it as a plea to that part only which it purports to answer, it is no discontinuance; provided that at the time of replying or demurring, he take judgment by nil dicit for that part of the count which is unanswered by the plea.

17. When several distinct and independent pleas are pleaded to different and separate parts of a count, the pleas are not double, and do not require the aid of the statute: and if the plaintiff may reply, or demur, to each plea, and take judgment by default, or nil dicit, as to all the matter not covered by each plea, in succession, so as ultimately to get judgment for all the matter contained in his declaration; yet, by the same process, the defendant, if his pleas are all good, and the issues or demurrers should be decided in his favor, will have made out a complete bar to the whole of the same matter; and as the final judgment of the court must be given upon the whole record, that judgment must be for the defendant.

18. Where several distinct and valid pleas in bar, are by the leave of the court, under the statute, pleaded to the same count, and issues taken thereon; if one of the issues be found for the defendant, and the residue for the plaintiff, yet the judgment must be for the defendant.

19. So if several distinct and valid pleas be, by the leave of the court, pleaded to one and the same part of the count, and issues be taken thereon, and one of the issues be found for the defendant, the judgment, as to so much of the count as is answered by the plea, must be for the defendant, although the other issues be found for the plaintiff.

20. Where there are separate and distinct pleas to different parts of the count, and issues taken thereon, and some of the issues are found for the plaintiff and some for the defendant, several damages should be assessed, and judgment will be rendered for the plaintiff as to the issues found for him; and for the defendant, as to the issues found for him.

21. And if, instead of taking issue, the plaintiff should demur to those pleas, (as he may safely do, without fear of a discontinuance, if he confines his prayer for judgment on the demurrer to so much of his count, as the plea professes to answer, and prays judgment by nil dicit for the residue,) and some of the demurrers should be decided in favor of the plaintiff, and some in favor of the defendant, the plaintiff would have judgment, and a writ of inquiry of damages, as to those decided in his favor, and the defendant would have judgment upon the others.

22. If it appears, upon the whole record, that any actionable part of the plaintiff's declaration remains unanswered by a sufficient plea, the plaintiff must have judgment for so much, if he shall have prayed judgment at the proper time so as to avoid a discontinuance; but if it appears, from the whole record, that every actionable part of the declaration had been fully answered by a valid plea in bar, the truth of which has either been admitted in the pleadings or found by the jury, the judgment must be for the defendant.

23. If some of the several matters pleaded be good justifications of what they profess to justify, and others be not, the plaintiff must demur to the latter, and plead over to the others. If he were to demur to the whole as one plea, and one of the several matters pleaded should be a good justification of what it purports to justify, the demurrer must be overruled in the same manner as a demurrer to a whole declaration would be overruled if any one of the counts should be good.

24. If an entire plea do not answer the whole count, or if a plea to a part of a count do not answer the whole part which it professes to answer, it is bad upon demurrer, and cannot derive aid from any other plea; but when a plea to a part of a count is an answer to such part, it needs no aid from any other plea; it is sufficient for all that it professes to answer.

25. If a plea be a good justification of what it purports to justify, the plaintiff cannot treat it as a nullity, and take judgment by nil dicit, for the whole matter contained in his declaration. He must demur or reply to the plea, and take judgment by default for what remains unanswered.

26. If the plaintiff demurs to the plea, and prays judgment for the whole matter in his declaration, he admits that the defendant has answered to the whole matter, but answered badly; and as the plea professes to answer only part of that matter, the plaintiff, by such demurrer, impliedly abandons all that part which the plea does not profess to answer, and therefore discontinues his suit for so much; and a discontinuance as to part, is a discontinuance as to the whole.

27. It is actionable in a libel, to charge the plaintiff with such matters "as induce an ill opinion to be had of the plaintiff," such as, to charge him with maliciously devising slanderous accusations against a third person.

28. A charge of moral obliquity must be proved by some act done malâ fide.

29. A man cannot defame in one sense and justify in another.

30. The dictum of Starkie, "that the same degree of certainty and precision are required in this plea as are requisite in an indictment or information," is not supported by the cases which he cites to confirm it. All the certainty that is required, is, that the plea shall contain a clear and distinct statement of the facts which constitute the ground of defence, so that they may be understood by the party who is to answer them, by the jury who are to ascertain the truth of the allegations, and by the court who are to give judgment.

31. An averment that the plaintiff did falsely, fraudulently, and unlawfully, alter a note so as materially to change the terms and conditions thereof, is a good plea in justification of a charge of forgery.

32. If there be judgment for the plaintiff upon demurrer to some of the defendant's pleas, and if issue of fact be joined upon the defendant's other pleas, the jury impanelled to try the issues of fact may be charged to assess the plaintiff's damages upon the judgment upon the demurrers, in case they should find the issues of fact for the plaintiff; but this does not give the plaintiff a right to open and close the argument to the jury where the defendant holds the affirmative of all the issues of fact.

[Approved in Murray v. Mason, Case No. 9,966.]

Action upon the case for a libel; plea in justification, and general demurrer, and joinder.

The declaration contains two counts.

The first count, after averring the plaintiff's good character, and denying that he had ever been guilty of fraud or forgery, recites, that whereas a certain Mrs. Moulton, or Mary G. Moulton had become indebted to the plaintiff [Alexander Kerr] in the sum of $125 for six months' rent of the plaintiff's house in Washington, which became due on the 15th of September, 1823; and being so in arrear the plaintiff stated an account thereof on the 10th of December, 1823, and by warrant of distress on that day authorized and directed a certain E. D. to collect the same and if necessary to distrain therefor, which distress was levied on her goods, on the premises, which were, by the officer making the distress, locked up in a room of the said house, and so continued unsold on the premises until the 15th of December, when, according to the terms of the lease, another quarter's rent, amounting to $62.50, had become due, so that there was due, on that day, to the plaintiff, from the said Mary, $187.50, for three quarters' rent, and the said Mary, being unable to pay the same, prevailed on the plaintiff to agree to take her promissory note, payable at three months from the said 15th of December, for the amount of the rent so due, with the indorsement of J. Q. Adams thereon, and prevailed on the said J. Q. A. to indorse the said note; in pursuance of which agreement the said note was so drawn and indorsed as aforesaid to the plaintiff who received the same and released the said goods which had been distrained. The said note, bearing date

on the 15th of December, 1823, for the payment of $187.50, three months after date to the order of John Q. Adams, Esq., for value received by nine months' rent to date, was, by the plaintiff, before it became payable, deposited for collection in the Bank of the Metropolis, in Washington, of which bank the plaintiff then was, and still is the cashier, and was afterwards protested for non-payment. "Previous to the indorsement and acceptance of the said note, the said J. Q. Adams had objected to the amount thereof and a letter had been written by the plaintiff to Mrs. Adams, explaining and removing the said objection, which appears in the libel hereinafter mentioned." Yet the said defendant [Peter Force], well knowing, &c., and wickedly and maliciously intending to injure the plaintiff in his good name &c. "and to cause it to be suspected and believed that the said plaintiff had been guilty of fraud, falsehood and forgery, and to subject him to the pains and penalties of the laws of the United States and of the said District, made and provided against persons so offending, and to vex," &c., heretofore, namely, on the 27th of October, 1824, at &c., falsely, wickedly, and maliciously, did publish, &c., of and concerning the plaintiff, and of and concerning the said rent so due as aforesaid, and of and concerning the said warrant of distress, and the levying thereof hereinbefore stated, and of and concerning the said promissory note drawn and indorsed and received by the plaintiff on account of the said rent as hereinbefore stated, and deposited for collection in the said bank as aforesaid, and of and concerning the conduct and doings of the said plaintiff in relation to the said rent, warrant, and distress, and promissory note aforesaid, a certain false, scandalous, malicious, and defamatory libel, containing amongst other things, the false, scandalous, malicious, defamatory, and libellous matter following, of and concerning the said plaintiff, and of and concerning the said rent, warrant, distress, and promissory note aforesaid, and of and concerning the actings and doings of the plaintiff in relation thereto, that is to say,—"Mr. Alexander Kerr," (meaning the plaintiff,)—"This gentleman has lately shown himself studious to emerge from the obscurity in which he has so long moved, and to which he has been indebted for the safety in which he has moved, to seek a notoriety which must lead to his destruction. We," (meaning the defendant,) "have been reluctant to make ourselves the instruments of his exposure. We have permitted him, for months past, to exercise his ingenuity and to obey the dictates of his malignant heart, in devising slanderous accusations against Mr. Adams in silence; we had hoped that a consciousness of his own moral obliquity, and of the invulnerable nature of the character which he assailed," (meaning the character of the said John Q. Adams) "would have taught him to desist; but he has been blind to the consequences of calling

down upon him the eye of the public; so true is the Latin adage, that quem Deus vult perdere, prius dementat." And also this other false, feigned, malicious, and defamatory, libellous matter, of and concerning the said plaintiff, and of and concerning the warrant of distress and promissory note before mentioned, following; that is to say, "It is observable that the original warrant" (the aforesaid warrant of distress meaning) "now in possession of Mr. Adams, and which we have seen, bears marks of alteration not altogether immaterial to the consciousness of Mr. Kerr. The word 'Mr.,' at the head of it, was evidently first written Mrs., and afterwards altered to Mr. The words, 'rented by Mrs. Moulton,' at the end, also in the handwriting of Mr. Kerr, are in a different ink from the rest of the warrant, and were obviously written at another time. When the alteration was made does not appear. It came thus into the possession of Mr. Adams. We shall have occasion, before we are done, to speak of other alterations by Mr. ·Kerr, of other documents which it will, perhaps, not be so easy for him to explain." Also these other false, scandalous, malicious, defamatory, libellous matters following, of and concerning the plaintiff, and of and concerning the said promissory note, and the said warrant of distress, and the said letter from the said plaintiff to the said Mrs. Adams in answer to the objections of the said John Q. Adams to the amount of the said note appearing in the said libel, or publication, that is to say,—"This letter" (meaning the letter of the plaintiff aforesaid) "it will be observed, cautiously avoids all mention of the sum for which the furniture had been distrained; and by separating the account for six months furnished to Mrs. Moulton, and the statement that there was now due nine months' rent, from the assertion that he had the goods locked up in the house, to bring her to a settlement, induced Mr. Adams to believe that Mrs. Moulton had mistaken the account, first furnished her by Mr. Kerr for the sum for which the furniture was distrained, and that it was really under distress for the whole sum of $187.50. Under that impression Mr. Adams put his name upon the note; and it was not until after it had been protested, that by the production of the warrant of distress itself, he discovered the deception." (Meaning that said plaintiff had by said letter and note, practised a fraud and deception on the said John Q. Adams.) "This was the deception" (meaning the said falsely alleged fraud and deception) "at which Mr. Adams expressed his indignation at the bank." Also these other false, scandalous, malicious, defamatory, libellous matters following, of and concerning the said plaintiff, and of and concerning the said promissory note, and of and concerning the actings and doings and statements of the said plaintiff in relation thereto, that is to say,—"We come now to the most unpleasant part of our task, to bring an accusation against Mr. Kerr, which, if true, must not only destroy all faith in his statements, but fix an indelible stain on his moral character;—if not true we hold ourselves ready to answer, for the slander, to the laws of our country. We now distinctly charge Mr. Kerr with altering the note signed by Mrs. Moulton, and indorsed by Mr. Adams after it was so signed and indorsed and while in bank. We believe, too, the alteration was such an one as to change the terms and conditions of the note" (meaning the terms and conditions of the promissory note aforesaid; and meaning thereby that the plaintiff had altered falsely and fraudulently the said note, so as to change the terms and conditions thereof, and had therein and thereby committed forgery.) [2]

2d count. And the said plaintiff further saith, that the said defendant further contriving, and falsely and maliciously intending as aforesaid, to injure the plaintiff as aforesaid, did, heretofore, namely, on the 27th of October, 1824, at &c., falsely, wickedly, and maliciously publish, and caused to be published, a certain other false, scandalous, malicious, and defamatory libel of and concerning the plaintiff and of and concerning the said promissory note in the first count hereof before mentioned, containing among other things the false, scandalous, malicious, defamatory, libellous matter following, of and concerning the said plaintiff, and of and concerning the said promissory note, that is to say: "He altered the aforesaid note, signed by Mrs. Moulton and indorsed by Mr. Adams, falsely and fraudulently, so as to change the terms and conditions thereof, and therein committed forgery." "He falsely made and forged an alteration in the note, signed by Mrs. Moulton and indorsed by Mr. Adams, so as to change the terms and conditions of the note," (meaning thereby and therein, that the plaintiff had committed forgery.) Also these other false, feigned, and scandalous words, to wit, of and concerning the said plaintiff, and of and concerning the said promissory note, to wit: "We now distinctly charge Mr. Kerr with altering the note signed by Mrs. Moulton," (meaning the said Mary G. Moulton in the first count mentioned,) "and indorsed by Mr. Adams after it was so signed and indorsed, and while in bank. We believe, too, the alteration of the said note such an one as to change the terms and conditions of the said note," (meaning the terms and conditions of the promissory note aforesaid, and meaning thereby that the plaintiff had altered, falsely and fraudulently, the said note, so as to change the terms and conditions thereof, and had therein and thereby committed forgery.)

Plea. The defendant comes and defends, &c.; and as to the publication of the matter contained in the supposed libel in the first

---

[2] Many of the obvious innuendoes are here omitted.

count mentioned and referred to, and of the matter and words contained in the supposed libel in the last (second) count mentioned and referred to, says that the plaintiff, his action thereof against him, ought not to have and maintain; because,—by protestation, not acknowledging or confessing the facts and circumstances set forth by way of inducement, in the introductory part of the declaration; and further, by protestation, not acknowledging or confessing that the matter and words contained in the said supposed libel, in the first and last counts respectively mentioned and referred to, and touching the alterations made by the plaintiff in the note, and other documents therein mentioned and referred to, did import in terms, or by any fair and proper interpretation or inference from the same, did imply a charge against the plaintiff of felonious forgery, or subjected him to the pains and penalties of the laws against persons so offending, in manner and form as the plaintiff, in and by the matter of inducement in the introductory part of his declaration, and in and by the innuendoes, interpretations, and inferences in his said declaration, has inferred and averred,—the defendant says, that before the committing of the said several supposed grievances in the declaration mentioned, and on various days and times for several months then next preceding, to wit, on the 13th of September, 1824, and on divers days and times between the 1st of July, 1824, and the 27th of October, 1824, the plaintiff had "shown himself studious to emerge from the obscurity," &c., (repeating and averring the truth of the several allegations in the supposed libel as charged, and in the words of the original publication.) With regard to the deception supposed to have been practised upon Mr. Adams, by the plaintiff's letter to Mrs. Adams, the plea does not aver that it was written by the plaintiff, nor that it was written with an evil intent, nor that the plaintiff deceived anybody.

In regard to the alterations, by the plaintiff, of other documents, the defendant says, that at the time of the publication aforesaid he had, and yet has, "occasion to speak of other alterations" by the plaintiff, "of other documents, which it will, perhaps, not be so easy for him," the plaintiff, "to explain," and which authorized and justified the defendant (in the performance of the most unpleasant part of the task which he had undertaken, to justify the said Mr. Adams against the slander of the plaintiff, by showing that no credit was due to the statements of the plaintiff in support of such slanders,) "to bring an accusation against the plaintiff, which, if true, must not only destroy all faith in his statements, but fix an indelible stain upon his moral character;" and the defendant further, in fact, says that the plaintiff, on divers days and times before the committing of the said supposed griev-

ances in the said declaration mentioned, or any of them, had made "other alterations" of divers and sundry documents, which authorized and justified the said accusation, and among other alterations the following, that is to say: That the plaintiff did, at some time between the 15th of December, in the year 1823, when the said note was dated, and the 18th of March, in the year 1824, when the same became due and payable, after the said note had been signed by the said Mrs. Moulton, and after the same had been indorsed by the said Mr. Adams, and after the delivery of the same, so signed and indorsed, to the plaintiff, alter the said note; and the defendant, at the time of the said publication, did believe, and yet does believe, the said alteration such an one as to change the terms and conditions of the said note, in this, that the said note, at all the several times when originally signed by the said Mrs. Moulton, when indorsed by the said Mr. Adams, and when delivered to the plaintiff, did not express, or in any manner indicate in its terms the nature of the consideration or value for which the same was given, but purported to be simply for value received, and so continued in the hands of the plaintiff for a long time after the delivery of the same to the plaintiff, so signed and indorsed as aforesaid; and the plaintiff afterwards, at some time to the defendant yet unknown, before the said note fell due and was protested (which was on the 18th of March, 1824) did, without the consent, privity, or knowledge of the said Mr. Adams, alter the said note, and add thereto, as a part of the original tenor of the said note, next following the words "for value received," the words "by nine months' rent to this date;" by which said alteration and addition it was made deceitfully and falsely to appear, that the said Mr. Adams had indorsed the said note with full notice and knowledge, expressly and distinctly communicated to him by the terms and on the face of the said note; and that the same did include and secure, and was intended to include and secure, not only so much of the said rent as had previously accrued and been distrained for, but all the subsequently accruing rent down to the date of the said note: and so the said Mr. Adams was falsely and unjustly concluded as by his own showing, in his complaint of the deception, at which he felt and expressed his indignation at the said bank as aforesaid; and could not, without being opposed by plain conclusions from such false and altered tenor of said note, allege that his ignorance, or want of recollection of the exact amount so distrained for, and of the time for which it had accrued, had been taken advantage of to entrap him into a liability beyond, and not contemplated in, the immediate and exclusive object and motives of charity, which had induced him to agree to lend his name as such surety and indorser as aforesaid;

to wit, the relief of the property of the said Mrs. Moulton from the actual distress which had been levied upon the same before the date of the said note, for rent previously accrued. The defendant averred the said note and alteration to be the same mentioned in the supposed libel. And, in order further to justify the charge of other alterations, by the plaintiff, of other documents, the defendant stated an alteration of a check, drawn by Mr. Moulder in favor of Mr. Cutts on the Branch Bank of the United States at Washington, which check Mr. Cutts passed to the plaintiff, who, finding that Mr. Moulder had no funds in that bank, (Mr. Cutts having failed to place them there, agreeably to his undertaking to Mr. Moulder,) altered the check, so as to make it appear to be a check drawn on the Bank of the Metropolis, of which the plaintiff was cashier, and where Mr. Moulder had funds. The alteration is averred by the defendant to have been unlawfully made by the plaintiff, without the consent, knowledge, or privity of Mr. Moulder, and without any notice to him; upon which altered check the plaintiff drew one hundred dollars from the Bank of the Metropolis, "according to the said falsely and unlawfully changed tenor of the said check." After stating, in support of the charge of moral obliquity, some transactions between the plaintiff and another person, the plea concludes thus: "For which reasons he, the defendant, at the times when," &c., "in the first and last counts of the said declaration mentioned, did publish the matter and words contained in the said supposed libel, in the said first and last counts respectively mentioned and referred to; as he lawfully might, for the causes aforesaid; and this he is ready to verify," &c. To this plea there was a general demurrer, and joinder.

Key & Coxe, for plaintiff, contended that the plea was bad, because it did not answer and justify the two innuendoes, viz., first, "meaning that said plaintiff had, by said letter and note, practised a fraud and deception on the said John Q. Adams;" and, second, "meaning thereby that the plaintiff had altered, falsely and fraudulently, the said note, so as to change the terms and conditions thereof, and had therein and thereby committed forgery." A plea of justification must be as certain and precise as an indictment or information. Starkie, Sland. & L. 179–340. The plea as to the deception does not admit that the letter was written with intent to deceive; nor does it justify the words is to be left to the jury. The meaning of the words is to be left to the jury. If the words are susceptible of two meanings, one good and the other bad, the jury is to decide, under all the circumstances given in evidence, in which sense the defendant used them; and if the plaintiff avers that they were used in the bad sense, there being a colloquium of matters in reference to which the words might have been used in such bad sense, the court, in considering the plea of justification upon demurrer, must suppose that the jury may find that they were used in such bad sense, and consequently the defendant must justify the use of them in that sense; or must deny that he used them in that sense; otherwise, a man may libel in one sense and justify in another. Rich v. Holt, Cro. Jac. 267; Rex v. Lofeild [2 Barnard, 128] 13 East, 554; Starkie, 55, 228. The defendant does not even aver that the plaintiff, wilfully, or knowingly, or fraudulently, or deceitfully, or unlawfully altered the note. Nor, in regard to Moulder's check, is any thing criminal or unlawful charged in the plea. The defendant ought to have averred that the alteration of the note was such an one as did change the terms and conditions of the note, although in the libel he only charged that he believed the alteration to be such as to change the terms and conditions of the note. A belief of a matter of law is as much a libel as a belief of a matter of fact. If I say I believe a man to be a murderer, it is equally libellous as if I say he is a murderer. Starkie, 58, 310; Hext v. Yeomans, 4 Coke, 15b.

Burrell & Jones, contrà. The construction of the words of the libel, taken per se, cannot be put in issue to the jury. The defendant could not have taken issue upon the averment, that the defendant meant to charge the plaintiff with fraud or forgery. The defendant is not bound to justify the words in any other sense than they import, per se, upon the face of the libel, unless that meaning be altered by the inducement, the colloquium, and the innuendo. Starkie, 289. If the libel be complete in itself, these are not necessary. It is not the office of an innuendo to introduce new matter; as if a man should say, you are "forsworn," and the declaration should say, "meaning thereby to charge the plaintiff with perjury," this would be bad; there being no inducement or colloquium to justify the innuendo, because that would be to submit matter of law, viz., the legal meaning of the words themselves, to the jury instead of to the court. There can be no inferential averment in a declaration. In this declaration there is no inducement nor colloquium to justify the inference that, in point of fact, the defendant meant to charge the plaintiff with forgery. The meaning of the libel is matter of law. The jury may, by a general verdict, decide that matter of law; but it cannot, per se, be put in issue to the jury. Id. 296, 300, 302, 303; Peake v. Oldham, Cowp. 275; Starkie, 55. The defendant is not bound to justify the worst sense of the words. Starkie, 309, 310. If the charge be of murder, the defendant must justify with legal precision, and state a specific instance; and so of other indictable offences. But if the charge be not of an indictable offence, certainty to common intent is sufficient.

If the charge be of a fact in itself specific, it may be justified as charged, and the defendant need not aver the will and the intent. The scienter may be inferred. The defendant is not bound to do more than aver the truth of the facts, as charged in the libel. Starkie, 339, 340; Wyld v. Cookman, Cro. Eliz. 492; 3 Johns. Cas. 198. The innuendo is not justified by the inducement and the colloquium, and therefore the defendant is not bound to answer it. It is only necessary that the justification should be so certain and precise that the plaintiff may know what facts are intended to be proved, and be prepared to answer them. Astley v. Younge, 2 Burrows, 807; Starkie, 339. If what is said in the libel be true, the truth is an answer to the allegation of malice in the declaration. Holt, Libel, 282; J'Anson v. Stuart, 1 Term R. 748. The libel does not charge the plaintiff with forgery. The alteration of the note may have been made by the plaintiff fraudulently, and yet be not a forgery; nor do the words, even with the aid of the inducement, colloquium, or any legitimate innuendo contained in the declaration, import a charge of forgery. It is alleged in the plea, as one of the instances of the other alterations alluded to in the libel. This is also a specific charge, and needs only to be justified in the words of the charge. The plea does so justify it; and avers the fact of the defendant's belief, that the alteration changed the terms and conditions of the note. This is all the defendant was bound to do. The belief was not of a fact, but of an inference of law,—the legal effect of the fact; and if the defendant had reasonable ground for that belief, the charge of malice is rebutted. The plea avers that it was done falsely and deceitfully, which is the utmost extent to which the defendant was bound to justify the charge. The plaintiff has no right to expound the meaning of the libel, and oblige the defendant to justify to the extent of such inflamed meaning. If justified to the extent to which the charge necessarily extends, it is sufficient.

Mr. Key, in reply. The jury are to ascertain in what sense the words were used by the defendant, (if they might have been used in one or the other sense,) from all the circumstances of the case. Whether the words can be taken in a particular sense, is matter of law. The office of the innuendo is to designate in which sense they might be taken; and such innuendo then becomes a matter to be decided by the jury, and the defendant is to admit or deny that they were used in that sense. Starkie, 281, 310; Brooks v. Bemiss, 8 Johns. 455; 20 Johns. 354, 355.

Before CRANCH, Chief Judge, and THRUSTON and MORSELL, Circuit Judges.

(November 27.)

CRANCH, Chief Judge (after stating the substance of the declaration and plea). To this plea there is a general demurrer and joinder, and the question for the court is, whether the facts stated in the plea justify the publication of the words stated in the declaration. The gravamen of both counts in the declaration is, that the defendant charged the plaintiff with forgery, in the alteration of Mrs. Moulton's note. If the words, under the circumstances stated in the declaration, are capable of the construction given to them by the plaintiff in his declaration, the defendant must justify them to that extent, and show in his plea a clear case of forgery. Cowp. 684. Whether the words are, under the circumstances, capable of that construction, is a question of law, to be decided by the court. Starkie, 42, 44, 55. Whether the defendant used them in that sense, and intended thereby to charge the plaintiff with forgery, is a question of fact, arising upon the plea of not guilty, and exclusively to be decided by the jury, upon all the circumstances in evidence before them. This question cannot arise upon the issue joined upon the plea of justification; because, by joining issue, the plaintiff has admitted the justification to be good, if true. So the defendant would not be permitted to contend before the jury, on that issue, that he used the words in a more mitigated sense than that in which he had attempted to justify them in his plea. The court cannot, before verdict, know whether the jury may not, under all the circumstances of the case, be of opinion that the defendant used the words in the worst sense of which they were capable; and, therefore, if the plaintiff shall have charged the defendant with having used them in that sense, the court cannot say that a plea, which does not justify the words in that sense, is sufficient.

If, in judging of the validity of the plea, the court should compare it only with that sense of the words which the court should think to be the sense in which they would be generally understood by the world at large, (although the court should be of opinion that the words were capable of the more aggravated meaning charged in the declaration,) and if, being of opinion, under the circumstances stated in the declaration, that the defendant did not use the words in that more aggravated sense, the court should therefore decide that a plea, not justifying the words in the aggravated sense, was sufficient; and if, upon the trial, the evidence should be that the defendant actually used the words in the more aggravated sense as charged in the declaration; and if the plaintiff should thereupon pray the court to instruct the jury, that if they should be satisfied by the evidence that the defendant used the words in that sense, they ought to find their verdict for the plaintiff, although the defendant should prove the truth of all the facts averred in his plea of justification, the court would be embarrassed. On one hand, the plaintiff would have a right to insist that the question, whether the

defendant used the words in the aggravated sense, and with the intent charged in the declaration, (if, in point of law the words were capable of that sense,) should be tried by the jury. On the other hand, the court would have adjudged the defendant's plea in justification to be good; and he was not bound to do more than prove the truth of his averments in his plea. The court, in such a case, in order to be consistent, must refuse to give the instruction prayed by the plaintiff, because the issue is joined upon the truth of the facts stated in the defendant's plea; and if those facts are found to be true, the verdict upon that issue must be for the defendant. A new trial would not do justice to the plaintiff, because the same issue would remain to be tried. The plaintiff's only remedy would be by writ of error to reverse the judgment of the court who had, upon demurrer, decided that the plea of justification was sufficient.

The first question, then, in the present case, is, whether the words stated in the declaration, taken in connection with the facts therein also stated, are capable of the sense therein imputed to them by the plaintiff? The words charged in the last count, are, "He altered the aforesaid note, signed by Mrs. Moulton, and indorsed by Mr. Adams, falsely and fraudulently, so as to change the terms and conditions thereof, and therein committed forgery." There can be no doubt that these words contain a direct and palpable charge of forgery, and that the plea is no justification of those words. The general issue is not pleaded; and the plea in justification, which is the only plea in the case, purports to justify all the words charged in both counts in the declaration, and concludes thus:—"For which reasons he, the defendant, at the times when," &c. "in the first and last counts of the declaration mentioned, did publish the matter and words contained in said supposed libel in the first and last counts respectively mentioned and referred to, as lawfully he might." This surely must have been an oversight, as the defendant certainly cannot contend that the matter of the plea is a justification of these words in the last count; and I am more inclined to think so as this point was not noticed in the argument, and yet it seems at once conclusive against the plea. I presume a distinction is not to be taken between libellous matter, and libellous words; for the plaintiff must in all cases set forth the very words, with the publication of which he means to charge the defendant; and some of those words, (and they must be actionable words,) must be proved. Starkie, Sland. & L. 266–279, 350. The averment therefore in the last count, that the libel published by the defendant, contained that libellous matter, must mean that it contained those libellous words; and the defendant, by admitting in his plea, that he published the matter and words contained in the supposed libel in the last count mentioned and referred to, admits that he charged the plaintiff with forgery. For the only means which the court has of knowing what the matter and words are which are contained in the said supposed libel in the last count mentioned, is the averment of the plaintiff, in that count, that it contains the matter above stated. The plea does not deny that the libel contains that matter, but avows and attempts to justify it. We cannot look into the printed libel. It is not now judicially before us. It is mere matter of evidence, to be introduced at the trial. We cannot therefore judicially see that the words before mentioned as being contained in the last count, are not in the printed paper; and we have as good a right judicially to believe they are, as that any other matter, charged in the declaration, is there. Here there would be an end of the case; for it cannot be supposed that the matters charged in the plea are a justification of a direct charge of forgery. The plaintiff is not charged in that plea with doing any act with an evil intent, much less with an intent to injure or defraud, or even to deceive any person. The essence of the crime of forgery consists in the evil intent; the intent to injure or defraud some person. It has been ingeniously argued that if the words in the libel constitute a charge of forgery, the same words averred in the plea, will constitute a sufficient charge of forgery to justify the words in the libel. But the rule for construing words in a libel differs from the rule for construing averments in a plea. In the former case, the rule is, that the words shall be understood by the court and jury in that sense which the author intended to convey to the minds of his hearers as evinced by all the circumstances of the case. Starkie, 44. But the rule of construction as to pleas, and especially as to pleas in justification of libel,—which it is said ought to have the same degree of certainty and precision as are requisite in an indictment,—(Id. 340) is that they shall be taken most strongly against the party pleading (1 Chit. Pl. 240, 241), and that a man shall not justify by intendment; but everything must be precisely alleged (Cro. Juiz. 492; Co. Litt. 303a).

The court cannot, in considering a plea, infer one fact from another, as a jury may; but is as much restricted to the precise facts, as it is in considering a special verdict. A plea in justification of libel, must be not only certain to a common intent, which is, in general, sufficient in pleas in bar, but it must be what Lord Coke calls "certain to a certain intent in general," and which he says is sufficient in counts, replications, and indictments. Co. Litt. 302a; Starkie, 176, 588, note 14. It is therefore not true that a reiteration in the plea, of the words contained in the libel, with an averment that they are true, will be a good justification, unless the words of the libel be so precise as to contain within themselves every thing that can be inferred from them. As in an indictment, so in a plea in justification of libel, nothing

material shall be taken by intendment. 2 Hawk. P. C. c. 25, § 60; Starkie, 179, 340; Bayard v. Malcolm, 1 Johns. 453–471. "The matter alleged, in the justification to be true, must in every respect correspond with the imputation complained of in the declaration; and so, with regard to every circumstance at all material, the facts set up by way of justification in the plea must be strictly conformable with the imputation charged in the declaration." Starkie, 342. In order to decide whether this plea be a good' justification of the words stated in the first count of the declaration, we must ascertain what is the imputation complained of in that count. "It may be laid down as a general rule that wherever words are used calculated to impress upon the minds of the hearers a suspicion of the plaintiff's having committed a criminal act, such an inference may, and ought to be drawn, whatever form of expression may be adopted." Id. 58. "In consideration of law that is certain which can be rendered so; it is therefore of no importance whether the terms used be doubtful, or apparently innocent, provided it can be shown that they could, or did convey the offensive meaning which forms the ground of complaint." Id. 75.

In ascertaining what was the imputation complained of in the first count, we must understand the words in the sense in which we think the writer intended they should be understood by those who should read or hear them. Looking then at the words charged in the first count we find them divided into four classes, each of which classes is averred to contain libellous matter.

(1) The first class is that beginning with the words, "Mr. Alexander Kerr," and ending with "prius dementat." These words charge Mr. Kerr, in general terms, with maliciously "devising slanderous accusations against Mr. Adams," and with "moral obliquity."

(2) The second class begins with the words, "It is observable that the original warrant," and ends with the words, "not so easy for him to explain." These words charge Mr. Kerr with making an alteration in the warrant, by changing the letters "Mrs." to "Mr." and adding the words, "rented to Mrs. Moulton," which alteration is said to be not altogether immaterial to the consciousness of Mr. Kerr, thereby insinuating some undefined improper motive, not explained by any innuendo. They also charge him in general terms, with other alterations of other documents, which it is said will perhaps not be so easy for him to explain; thereby imputing to him still more improper, but undefined motives, not explained by innuendo.

(3) The third class begins with the words, "This letter," and ends with the words, "indignation at the bank." The imputation contained in these words, is, that the plaintiff, in writing a letter to Mrs. Adams for the purpose of explaining the reason why the note, presented to Mr. Adams for his indorsement, was for a larger sum than he supposed it would be, and to induce him to indorse a note for that larger sum, being the amount of nine months' rent, when the plaintiff had reason to suppose that Mr. Adams had agreed to indorse a note for six months' rent only, cautiously avoided to mention the sum for which the furniture had been distrained, and so artfully wrote the letter as to induce Mr. Adams to believe that the furniture had been distrained for the whole amount of nine months' rent, when in fact it was distrained for only six months' rent, and under that impression to indorse the note for nine months' rent, thereby charging the plaintiff with practising a fraudulent deception upon Mr. Adams, as explained by the innuendo.

(4) The fourth class of words begins, "We now come," &c. and ends with, "conditions of the note." The imputation contained in these words, is, that the plaintiff altered Mrs. Moulton's note, after it was signed by her and indorsed by Mr. Adams, and that the alteration was such as to change the terms and conditions of the note, and to fix an indelible stain on the moral character of the plaintiff. To have this effect it must have been done with an evil intent, an intent to injure or defraud some person. An alteration of a note which changes its terms and conditions, must be a material alteration; and a material alteration of a note, by the holder, with intent to injure or defraud any person, is forgery. It makes no difference that the defendant only said he believed the alteration to be such as to change the terms and conditions of the note. If I say, of a man, that I believe he committed murder, I say it at my peril. I cannot justify by saying, and proving, that I did believe it. I can only justify by proving the fact of murder or by circumstances showing the total absence of malice. Starkie, 58–61; Hext's Case, 4 Coke, 15b; Harrison v. King, 7 Taunt. 431, 4 Price, 46; the cases cited in Broughton's Case, Moore, 142; Stich v. Wisedome, Cro. Eliz. 348.

The plaintiff, in his declaration, has averred that the defendant published these words with the malicious intent to cause it to be suspected and believed that the plaintiff had been guilty of forgery, and to subject him to the pains and penalties of the law against persons so offending; and after reciting the words avers that the defendant meant thereby "that the plaintiff had altered falsely and fraudulently the said note so as to change the terms and conditions thereof, and had therein and thereby committed forgery." When we recollect the solemn and portentous language with which this charge is introduced by the defendant,—language calculated to give the utmost effect to the words used in making the charge,—when we find those words deliberately selected with an expectation that they would become the subject of judicial investigation; when the writer him-

self positively affirms that the accusation which he is about to make, is of an offence so heinous, that, if true, it must not only destroy all faith in the plaintiff's statements, but fix an indelible stain on his moral character, can we, for a moment, suppose that the defendant meant to charge the plaintiff with an innocent act? If not innocent, it must have been wicked; if wicked, it must have been done with an evil intent, an intent to injure some person. Of what crime is he guilty, who, being the holder of a promissory note, so alters it as to change its terms and conditions with intent to injure another person? Is it any thing short of forgery? I cannot help thinking, not only that these words are capable of the meaning imputed to them, but that they will be so understood by the greater number of those who shall read, or hear them. I must, therefore, consider them as importing a charge of forgery. If the court should be of this opinion, and that the plea is insufficient, it would not be necessary to inquire whether there are other actionable words in the declaration; however, as the court may not concur with me, I will, before I proceed to consider the plea, go into that inquiry.

(1) If the first class of words, in the first count, contain any actionable words, they are those which charge Mr. Kerr, in general terms, with "devising slanderous accusations against Mr. Adams;" and those which charge him with "moral obliquity." At present I do not think them actionable, but shall consider them so, when I come to inquire as to the sufficiency of the plea.

(2) I am very doubtful whether the second class of words in the first count, contains any thing actionable. The alterations in the warrant of distress, do not appear to have been material; and the charge of other alterations of other documents, seems to be too vague to affect the plaintiff's reputation. I shall, however, consider them also as actionable when I consider the plea.

(3) The words contained in the third class, are, in my opinion, actionable. They impute to the plaintiff a fraudulent deception of Mr. Adams, by which he was induced to indorse a note for a larger sum than he intended. It is true that the fraudulent motive is not expressly stated; but facts are stated which excite a strong suspicion that the plaintiff knew, or had good reason to suppose, that Mr. Adams had agreed to indorse Mrs. Moulton's note for six months' rent only, that being the amount due when he was applied to by Mrs. Moulton, and that being the amount for which her furniture was distrained; and that with that knowledge, the plaintiff wrote an artful letter to Mrs. Adams, which induced Mr. Adams to believe that the furniture was distrained for the whole nine months' rent, and, under that impression, to indorse the note for that amount. The story thus told irresistibly raises a suspicion of the motive, and leaves little room to doubt that the writer intended that it should be believed that the motive was fraudulent.

(4) The fourth class of words has been already considered, and is that which contains the most serious charge. In considering the language of the plea, we are not at liberty to exercise the same latitude of construction and inference as we may in considering the words of the libel. Technical proceedings require technical precision. We are not permitted to consider the defendant as positively averring the truth of every inference which the world would draw from the words of the libel. We are not even permitted to draw any inference of fact from the facts stated in the plea. If the words in the first class, charging the plaintiff with maliciously devising slanderous accusations against Mr. Adams, be actionable, the plea is defective in not averring that the plaintiff did devise slanderous accusations against Mr. Adams, and in not setting forth the particular accusations which he devised. The plea, in this respect, avers the act of the defendant only. It states that the defendant permitted the plaintiff to obey the dictates of his malignant heart in devising slanderous accusations against Mr. Adams, not that the plaintiff did, in fact, devise them. If the general allegation of moral obliquity, in the first class of words, be actionable, the plea is defective in not setting forth any acts of moral turpitude. The plea does not charge the plaintiff with doing any act with an evil intent, except in the two instances of official misconduct as cashier, in the transactions with Mr. Belt, which are specially adduced as manifestations of moral obliquity. In the first of those instances the defendant charges that the plaintiff, (who was cashier of the Bank of the Metropolis, had undertaken to ascertain the amount due upon a certain note indorsed by Mr. Belt, and which he was about to pay into that bank,) unfairly and secretly, without notice to Mr. Belt, computed in the sum so to be paid by Mr. Belt, a balance of account due by one Bestor, who was insolvent, and for which balance Mr. Belt was not liable, but which the plaintiff endeavored to palm upon, and extort from, Mr. Belt, under pretence of computing and ascertaining what was due upon the note for which he was liable as indorser. In the second of those instances, the defendant charges that the Bank of the Metropolis, of which the plaintiff was cashier, having recovered judgment against Mr. Belt upon his indorsement of Appler's two notes, and Mr. Belt having $300 which he wished to pay on account of that judgment, tendered the same to the plaintiff, and required of him, as cashier, a receipt for such payment accordingly. But the plaintiff, as cashier, under pretence of crediting Mr. Belt with the same, and of giving him a receipt therefor, but at the same time, secretly, artfully, and subtilely contriving how to deprive the said Belt of the exclusive benefit and credit of such pay-

ment, unjustly and unfairly attempted and labored, in the discharge of his duty as cashier, to have the said payment passed to the credit of the entire mass of the said Appler's debt in the said bank, for which Mr. Belt was not liable; and artfully and purposely framed, and would then and there have palmed and imposed upon the said Belt, a receipt for the said payment, so contrived and worded as to pass the said payment to the general credit of the entire mass of the said Appler's debt. Both these instances are cases in which the plaintiff was acting as cashier, and in neither of them is he charged with fraud. The epithets used are, "unfairly and secretly computed," "unjustly and unfairly attempted," and "artfully and purposely framed," &c., neither of which terms, used in regard to the official act of a cashier, necessarily implies moral obliquity.

The other acts charged in the plea, and which might possibly be supposed to justify the charge of moral obliquity, are, 1st. The deception practised upon Mr. Adams by means of the letter to Mrs. Adams. But there is no averment in the plea that the plaintiff wrote that letter, or that he did any of the acts which it is averred were done by that letter; nor that the plaintiff deceived, or attempted to deceive, Mr. Adams; much less that he wilfully and fraudulently deceived him. 2dly. The alteration of the warrant of distress. This is not charged in the plea, to have been done with any bad intent, or to have been attended by any circumstance of moral turpitude. 3dly. The alteration of Mrs. Moulton's note. The averment in the plea, in regard to this transaction, is simply that after the note was signed, indorsed, and delivered to the plaintiff, and before it became payable, he altered the note by adding, after the words "value received," the words "in nine months' rent to this date." That this alteration was made without the privity, knowledge, or consent of Mr. Adams, and that the defendant did, at the time of the publication, believe, and does yet believe the said alteration such an one as to change the terms and conditions of the said note, in this &c., showing how the alteration affected Mr. Adams's rights, and prevented him from denying, without being contradicted by the face of the note, that he knew that the note was given for more than the sum for which the furniture was distrained. It is not stated that the alteration was made with any evil intent; and therefore it cannot be proof of moral obliquity. It is true that the words "deceitfully and falsely," are used; but they are epithets applied to the appearance which was the effect of the alteration, not to the act of altering. The words are, "by which said alteration it was made deceitfully and falsely to appear that Mr. Adams had notice, by the terms of the note itself, that it included, not only the amount of the rent distrained for, but all subsequently accruing rent down to the date of the note, and so the

said Mr. Adams was falsely and unjustly concluded, as by his own showing," &c. 4thly. The alteration of Mr. Moulder's check.

The facts of this transaction, as stated in the plea, are as follows:—After stating that Mr. Moulder had drawn a check on the office of discount and deposit, Washington, for $100, dated and payable at a future day, in favor of Mr. Cutts, upon the assurance that the latter would place funds in that office to the credit of the former to meet it at maturity; and after stating that Mr. Cutts, before the day on which the same was dated and made payable, passed the same to the plaintiff, who at maturity presented it to the said office for payment, which was refused in consequence of Mr. Cutts's failing to place funds there to meet it, and of Mr. Moulder's having no funds there; the defendant in his plea, avers that the plaintiff did on the same day, "without the consent, knowledge, or privity of said Moulder, and without any notice whatever to the said Moulder, unlawfully alter and change the said check from a check drawn upon and directed to the said office of discount and deposit as aforesaid, to a check purporting to be a check drawn by the said Moulder, upon and directed to the said Bank of the Metropolis; and in order to effect such change and alteration, did then and there erase from the said check, all the words by which the same purported to be a check so drawn upon and directed to the said office of discount and deposit, and did then and there write and insert, in lieu thereof, the name and style of the Bank of the Metropolis, as the bank upon which the said check was so drawn, and to which it was directed as aforesaid; and did then and there pass the said check at the said last-mentioned bank, as a check drawn upon and directed to said bank; and by means thereof, did then and there draw out of the funds and credits of the said Moulder in the said bank, the sum of $100, according to the said falsely and unlawfully changed and altered tenor of the said check." It is not averred in the plea that this alteration was made with any evil intent. The plaintiff might have done it innocently. An act, not done with an evil intent, cannot be evidence of moral obliquity, although it may have been unlawful.

I have thus examined all the facts charged against the plaintiff in the plea, as a justification of the words published; and find that none of them are charged in such a manner as to justify the accusation of moral obliquity. Consequently they do not, in my opinion, justify the charge of fraudulent deception by means of the plaintiff's letter to Mrs. Adams; or of forgery, or of a fraudulent alteration of Mrs. Moulton's note, or of fraudulent alterations of other documents. The point of the slander seems to me, in every instance, to be avoided. The slander is not in the words themselves, but in the ideas which those words excite in the minds

of those who hear them, and the inferences which the world draws from them. These inferences are not met by the allegations of the plea. I am, therefore, of opinion that the plea is substantially defective, as a justification of even the mildest sense in which the words may be reasonably construed.

THE COURT having thus given judgment upon the demurrer, permitted the defendant, without opposition by the plaintiff, to amend his pleadings; whereupon, on the 18th of December, 1826, he offered to plead fourteen additional separate pleas, of which the first four were to the first class of words charged in the first count, beginning "Mr. Alexander Kerr," and ending "prius dementat." (1) The first of the fourteen pleas only reiterates the words of the libel, and avers them to be true. (2) The second does the same, and adds an averment that the plaintiff did, with intent to injure and defame Mr. Adams, devise and publish slanderous accusations against him; and gives the reason which induced the defendant to publish the truth as to the plaintiff's character, but contains no averment of any particular instance of moral obliquity. (3) The third contains all that is contained in the two first pleas, with the addition of sundry instances of what the defendant supposes to be moral obliquity in the plaintiff. (4) The fourth purports to be a justification of the charge of moral obliquity only. (5, 6) The fifth and sixth pleas are to the second class of words charged in the first count; beginning "It is observable," and ending "for him to explain." (7, 8) The seventh and eighth pleas are to the third class of words in the first count; beginning "this letter," and ending "indignation at the bank." (9, 10) The ninth and tenth pleas are to the fourth class of words charged in the first count; beginning "We come, now," and ending "the terms and conditions of the note." (11, 12) The eleventh and twelfth pleas are to the first set of words in the first count; beginning "He altered." and ending "conditions of the note." (13, 14) The thirteenth and fourteenth pleas are to the last set of words in the second count, being the same words to which the ninth and tenth pleas purport to be an answer.

The first of these pleas begins thus:—"And the said P. F., by W. Jones and S. B. Burrell, his attorneys, comes and defends the force and injury, when, &c.; and as to the publication of so much of the matter contained in the supposed libel, in the first count of the said declaration mentioned, as is in the said count in the first place mentioned and set forth, beginning with the words, 'Mr. Alexander Kerr,' and ending with the words 'prius dementat;' says that the said plaintiff ought not to have or maintain his aforesaid action thereof against him, because he says," &c. &c. "For which reasons the said defendant did, at," &c., "publish so much of the matter contained in the said supposed libel,

as is mentioned and referred to in the introductory part of this plea, as he lawfully might, for the causes aforesaid," &c.; and concludes thus:—"Wherefore he prays judgment, if the said plaintiff ought to have or maintain his aforesaid action thereof against him," &c. Each of the other pleas begins thus:—"And the said defendant, by the leave of the court here first had and obtained," &c., "further defends the force and injury, when," &c.; "and as to the publication of so much of the matter contained," &c., "says the plaintiff ought not to have or maintain his aforesaid action thereof against him, because he says," &c.; and concludes thus:—"And this he is ready to verify; wherefore he, as before, prays judgment, if the plaintiff ought to have or maintain his aforesaid action thereof against him," &c. No one of the fourteen pleas purports to answer the whole matter in either count.

THE COURT, upon the plaintiff's motion, rejected (that is, refused to receive,) the first, second, seventh, ninth, eleventh, and thirteenth pleas, because they did not contain a justification of what they purported to justify.

Mr. Key, for plaintiff, then moved for judgment, by nil dicit, upon each of the remaining pleas, as to so much as the plea did not cover; so as ultimately to obtain judgment, by nil dicit, for the whole matter charged in the declaration, although the whole matter should be specially justified by the pleas, when all are taken together; alleging that one plea cannot be aided by another; that is, that the defect of one plea cannot be supplied by another. Currie v. Henry, 2 Johns. 433, 437; Sevey v. Blacklin, 2 Mass. 543; Grills v. Mannell, Willes. 380; 1 Chit. 543. And that although the defendant may plead several matters, as to different parts of the same count, they must all be pleaded in the same plea, and constitute but one plea. Patcher v. Sprague, 2 Johns. 462–465; Currie v. Henry, 2 Johns. 437; Story, Pl. 480, 481; 2 Har. Ent. 88; 2 Chit. 421, 532, 535.

Mr. Key also contended that each plea is a mere nullity, and that the plaintiff is entitled to judgment. by nil dicit, upon the whole matter in the declaration. Marsteller v. McClean, 7 Cranch, 156.

Upon the motion for judgment, by nil dicit, as to so much of the matter in the declaration as is left unanswered by each respective plea,—

CRANCH. Chief Judge. The case of Patcher v. Sprague. from 2 Johns. 462, is cited by the plaintiff, to show that "whatever is traversable in pleading, and which is not traversed, is admitted." This is certainly true. 1 Chit. 591. But in that case the replication, which was supposed to admit the fact not traversed, was a replication which purported to be an answer to the whole plea. That case, therefore, only shows that the doctrine

applies to such pleas as purport to answer the whole count; or, at least, such traversable matter as is within that part of the count which the plea purports to answer, when the plea purports to answer only a part of the count. In the case of Currie v. Henry, 2 Johns. 437, Spencer, J., in delivering the opinion of the court, said: "Pleas, pleaded under the leave of the court, must contain in each of them sufficient matter in law to bar the plaintiff's action, and they cannot be made to depend on facts stated in other pleas." This doctrine is stated as the reason for adjudging the defendant's third and fifth pleas in that case to be bad, on special demurrer. Each of those pleas purported to answer the whole count. The doctrine, therefore, so far as that case goes, is only applicable to pleas which profess to answer the whole count. "When the body of a replication contains an answer to a part of a plea, the commencement should recite or specify that part intended to be answered; for should the commencement assume to answer the whole plea, but the body contain an answer only to part, the whole replication will be insufficient, and so vice versa." "In this case," says Mr. Chitty, "the form may run thus:—'And the said A. B., as to so much of the said plea of the said C. D. by him secondly above pleaded, as relates to the said supposed recognizance in the said plea mentioned, says that he ought not to be barred from having or maintaining his aforesaid action thereof against him. because he says,' &c.; and the other part of the plea may commence as follows:—'And the said A. B., as to the residue of the said plea, saith, "precludi non," &c., "because," ' &c. "On the other hand, when the matter to be replied is equally an answer to several pleas, it is proper, in order to avoid expense, to answer all the pleas in one replication." "In these cases, the commencement should apply to and profess to answer all the pleas. So where, to a plea of judgment outstanding, the plaintiff replied that each is fraudulent, he may conclude with one verification." 1 Chit. 573. "It is said that matter which is the ground of the suit, or upon which issue might be taken, cannot be protested, and that a protestation which is repugnant to, or inconsistent with the plea, is inartificial and improper. In these cases, the replication should either admit the part of the plea which is not disputed, by saying, 'true it is that,' &c., or should at once deny the matter intended to be tried; though the latter mode, as being the most concise, appears preferable; for whatever is not traversed is, in effect, admitted." Id. 590. "The qualities of a replication in a great measure resemble those of a plea: which are, that it answers so much of the plea as it professes to answer; and that if bad in part, it is bad for the whole; and that it must be single. If it do not answer so much of the plea as it professes to answer, it will be a discontinuance." 1 Chit. 617; Marsteller v. McClean, 7 Cranch [11 U. S.] 156; Com. Dig. "Plead-

er," F. 4, W. 2; Hancock v. Prowd, 1 Saund. 338. See, also, 1 Chit. 511, 512, 540, 592, 618; Co. Litt. 304a; Combe v. Talbot, Salk. 218; Curtis v. Bateman, 1 Sid. 39; Wilson v. Law, Carth. 334; Same Case, Skin. 554; Middleton v. Cheseman, Yelv. 65; Bray v. Fisher, 2 Rolle, 390; 1 Rolle, Abr. 485b, 45; 7 Hen. VI. pl. 27; Johnson v. Turner, Yelv. 5, 1 Brownl. & G. 192; Penton v. Robart, 2 East, 88; 4 Coke, 62; Herlakenden's Case, Gilb. Hist. C. L. 155, 185; Woodward v. Robinson, 1 Strange, 302; Wilson v. Dodd, 1 Rolle, 176; Wats v. King, Cro. Jac. 353.

From all the cases which I have found, the rule seems to be, that where the plea professes to answer only a part of the actionable matter charged in the count, if the plaintiff, by his replication or demurrer, treats it as a plea to the whole matter, it is a discontinuance. But if the plaintiff, by his replication or demurrer, treat it as a plea to that part only which it purports to answer, it is no discontinuance; provided that, at the time of replying or demurring, he take judgment, by nil dicit, for that part of the count which is unanswered by the plea. Where several distinct and independent pleas are pleaded to different and separate parts of a count. the pleas are not double, and do not require the aid of the statute; and if the plaintiff may reply or demur to each plea, and take judgment by default, or nil dicit, (which is the same thing,) as to all the matter not covered by each plea, in succession, so as ultimately to get judgment for all the matter contained in his declaration; and yet by the same process the defendant, if his pleas are all good, and the issues or demurrers be decided in his favor, will have made out a complete bar to the whole of the same matter; and as the final judgment of the court must be upon the whole record, that judgment must be for the defendant. Tippet v. May, 1 Bos. & P. 411; Bonham's Case, 8 Coke, 120, b; Rigeway's Case. 3 Coke, 52, b; Turnor's Case, 8 Coke, 133, b; Hobart, 199, S. P.

Where several distinct and valid pleas in bar are. by the leave of the court, under the statute, pleaded to the same count, and issues taken thereon, if one of the issues be found for the defendant, and the residue for the plaintiff, yet the judgment must be for the defendant. Coke v. Sayer, 2 Wils. 85. So if several distinct and valid pleas in bar be, by the leave of the court, pleaded to one and the same part of the count, and issue be taken thereon, and one of the issues be found for the defendant, the judgment. as to so much of the count as is answered by the plea. must be for the defendant, although the other issues be found for the plaintiff. Where there are separate and distinct pleas to different parts of the count, and issues taken thereon, and some of the issues be found for the plaintiff and some for the defendant, several damages should be assessed. and judgment will be entered for the plaintiff as to the issues found for

him; and for the defendant as to the issues found for him. And if, instead of taking issue, the plaintiff should demur to those pleas (as he may safely do without fear of a discontinuance if he confine his prayer for judgment, on the demurrers to so much of his count as the plea professes to answer, and pray judgment by nil dicit for the residue,) and some of the demurrers should be decided in favor of the plaintiff, and some in favor of the defendant, the plaintiff would have judgment and a writ of inquiry of damages as to those decided in his favor, and the defendant would have judgment upon the others. If it appear upon the whole record that any actionable part of the plaintiff's declaration remain unanswered by a sufficient plea, the plaintiff must have judgment for so much, if he shall have prayed judgment at the proper time, so as to avoid a discontinuance. But if it appear from the whole record that every actionable part of the declaration has been fully answered by a valid plea in bar, the truth of which has either been admitted in the pleadings, or found by the jury, the judgment must be for the defendant.

The form of pleading offered by the defendant, in the present case, seems to be fair, and more likely to result in a just judgment than if he had pleaded all the matters in one plea, unless in that plea he had tendered as many verifications as there are now pleas. And if he had done that, I see no substantial difference between that and the present manner of pleading. In that mode of pleading the defendant would come and say that the plaintiff his action aforesaid thereof against him ought not to have or maintain, because he says that as to so much, &c., he says, &c., and this he is ready to verify; and as to so much, &c., he says, &c., and this he is ready to verify; and so on, as to each particular set of words, and then conclude with a general prayer for judgment as to the whole count, instead of inserting, after every verification a special prayer for judgment as to the particular part of the count to which the matter thus offered to be verified, applies. The difference seems to be only a difference of form; for in the mode of pleading which the plaintiff's counsel supposes to be right, each separate matter of defence pleaded to the distinct and different parts of the count, would, in effect, be a distinct and separate plea. It could derive no aid from the other matters of defence pleaded to a different part of the count. If it be not a good justification of the matter which it professes, in its introductory part, to justify, it must be the subject of a separate demurrer on the part of the plaintiff. Douglass v. Satterlee, 11 Johns. 16. If some of the several matters pleaded be good justifications of what they profess to justify, and others be not, the plaintiff must demur to the latter, and plead over to the others. If he were to demur to the whole as one plea, and one of the several matters pleaded should be a good justification of what it purports to justify, the demurrer must be overruled in the same manner as a demurrer to a whole declaration would be overruled if any one of the counts should be good. Com. Dig. "Pleader," 2, 3; 1 Chit. 643; Powdick v. Lyon, 11 East, 565; Seddon v. Senate, 13 East, 76, 77. If none of the several matters pleaded to the respective parts of the count should be a good justification of what it purports to justify, perhaps one demurrer to the whole might be good, if it purported to be a demurrer to the separate matters pleaded; but then it would be good only reddendo singula singulis; and because it would, in effect, be equivalent to a separate demurrer to each matter of defence pleaded. The two modes of pleading differ only in form; and I can see no disadvantage to the plaintiff from the mode adopted by the defendant; nor any benefit which the plaintiff could derive from that which he seems to suppose to be the most correct.

If the difference be only in form, then, if by pleading in the form which the plaintiff contends for, he could not take judgment by nil dicit, so here where all the pleas are pleaded uno flatu, although they have not one common commencement and conclusion, I should think the plaintiff could not have judgment by default on any part of his count. If in replying to each plea he should take judgment, by default, as to all the matter in the count not covered by the plea, it would be only matter of form, to save a technical, or formal discontinuance. It is said that one plea cannot be aided by another. This is true, whether each plea be entire, or whether it purport to answer only a part. If an entire plea do not answer the whole count; or if a plea to a part of a count do not answer the whole part which it professes to answer, it is bad upon demurrer, and cannot derive aid from any other plea. But when a plea to a part of a count is an answer to such part, it needs no aid from any other plea; it is sufficient for all that it professes to answer. So when the defendant, in what the plaintiff's counsel supposes to be one plea, pleads several distinct matters to several distinct parts of the count, each distinct matter pleaded must be sufficient in itself to answer what it professes to answer, and can derive no aid fron another distinct matter pleaded to another distinct part of the count; so that the rule applies equally to both forms of pleading.

If a plea be a good justification of what it purports to justify, the plaintiff cannot treat it as a nullity, and take judgment by nil dicit for the whole matter contained in his declaration. He must demur or reply to the plea, and take judgment, by default, for what remains unanswered. If the plaintiff demur and pray judgment for the whole

matter in his declaration, he admits that the defendant has answered to the whole matter; but answered badly (Taylor v. Cole, 1 H. Bl. 562); and as the plea professes to answer only a part of that matter, the plaintiff, by such demurrer, impliedly abandons all that part which the plea does not profess to answer; and therefore, and thereby, discontinues his suit for so much; and a discontinuance as to part (as before observed) is a discontinuance as to the whole. Every demurrer concludes with its appropriate prayer for judgment, and if it be to a particular count, or breach, it is qualified accordingly. 1 Chit. Pl. 644. If it be to a plea in abatement, and conclude as if it were a plea in bar, it will be a discontinuance. In Hughes v. Phillips, Yelv. 38, the court said, "It is not all one nihil dicere ac insufficienter dicere; for then upon every insufficient bar judgment should be upon nil dicit, which is not so." See, also, Story, Pl. 311, the form of a demurrer to a particular breach of covenant, and joinder; and in pages 303, 322, a demurrer to several pleas. See, also, in 1 Har. Ent. 90, the form of a judgment against the defendant who had neglected to plead as to part of a particular count, and where the plaintiff takes judgment by nil dicit as to that, in order to prevent a discontinuance. See, also, in Id. 212, the form of a verdict in slander, part for the plaintiff and part for the defendant. For these reasons THE COURT refused to give judgment by nil dicit, either as to the respective parts uncovered by each plea when taken separately; or to consider the several pleas as nullities, and to give judgment by default for the whole matter in the plaintiff's declaration.

Key & Coxe, for plaintiff, then pressed the court to say whether they considered the several pleas as constituting one plea, or whether they considered them as several pleas.

But THE COURT declined giving an answer, saying that they were under no obligation to do so.

CRANCH, Chief Judge, however, said, that he considered them, (so far as they were not double, and went to constitute one defence to one count,) as constituting one plea, in the same sense as several matters, separately and distinctly pleaded and verified to separate and distinct causes of action in one count, would be considered as one plea, if they had only one common commencement and conclusion in the common form. That in all those pleas which go only to a part of the count, and do not need the aid of the statute respecting double pleading, the words, "by leave of the court here first had and obtained," were surplusage; and that whether the several matters were pleaded in one form or the other, there must, or at least may, be separate replications, or

demurrers, to each matter. The plaintiff then filed one special demurrer to all the pleas, in this form, viz.: "And the said Alexander Kerr, by F. S. Key, his attorney, saith that the said several pleas of the said Peter Force, and the matters therein contained, in manner and form as the same are above pleaded and set forth are not sufficient to prevent him, the said plaintiff, from having and maintaining his action aforesaid thereof against him, and that he, the said Alexander Kerr, is not bound by the law of the land to make answer thereunto; wherefore, for want of a sufficient plea in that behalf, the said Alexander Kerr, prays judgment and his damages by him sustained on occasion of the committing of the said grievances in the said declaration mentioned, to be adjudged to him. And for special causes of demurrer he states: (1) That neither of the said pleas contains in itself, or professes to contain a sufficient answer to the whole declaration, or either count thereof, but proposes to answer, and does, in fact, answer to only a part thereof; and does not sufficiently traverse, deny, or confess and avoid, in any manner the said charges contained in the residue of the said declaration, or any part thereof. (2) Because the said pleas do not, nor does either of them contain a sufficient answer to such part of the declaration of the plaintiff, as they respectively profess to answer. (3) Because they are informal and defective, and have blanks. (4) Because they profess to be double pleas under and by virtue of the statute allowing double pleading; whereas no one of them is, or contains, an entire answer to the whole declaration or any one count thereof, as in law it should and ought to do." The defendant joined in demurrer specially (as in the case of Johnson v. Turner, Yelv. 5), in this manner, or to this effect: "And the said defendant, as to the plaintiff's demurrer to the defendant's third plea, says, that as to so much of the supposed libellous matter mentioned in the plaintiff's declaration, as is, in the introductory part of the said plea, mentioned, the plaintiff ought not to have or maintain his action aforesaid thereof against him the said defendant, because he says that his said plea, as to so much of the said supposed libellous matter as is in the said introductory part thereof mentioned, is good and sufficient in law to preclude the said plaintiff from having and maintaining his aforesaid action thereof against him, and this he is ready to verify; wherefore, for want of a sufficient replication to the said plea, the said defendant prays judgment, &c.," and so on as to the other pleas.

The first question, upon this demurrer is, whether the first set of words, in the first count, are actionable? I think they are. In the words of Lord Holt (in Cropp v. Tilney, 3 Salk. 226,) "they induce an ill opinion to be had of the plaintiff." They charge him with maliciously devising slan-

derous accusations against Mr. Adams; and with moral obliquity.

The third plea states positively the fact, that the plaintiff, with intent to injure and defame Mr. Adams, did devise and publish slanderous accusations against him, charging him with unfair, fraudulent, and dishonest conduct in endeavoring to get rid of a just and legal responsibility which he had incurred as indorser of the promissory note in the declaration mentioned. Moral obliquity must be proved by some act done malâ fide. Deceit and falsehood include mala fides. To charge the plaintiff with deceit and falsehood, is to charge him with moral obliquity. The plea charges that the plaintiff, by a material alteration of a note indorsed by Mr. Adams, deceitfully and falsely made it to appear that Mr. Adams knew, at the time of indorsing the note, that it was for nine months' rent, whereas he intended to indorse a note for only six months' rent. That act, therefore, must have been an act of moral obliquity. Without inquiring, therefore, whether the other act charged in this plea be evidence of moral obliquity, I think it quite as clear that the plea is good, as that the words are. actionable. In the case of Riggs v. Denniston, 3 Johns. Cas. 198, Judge Kent, in delivering the opinion of the court, after stating that the libel meant to impute to the plaintiff a voluntary offer of himself as a witness to divulge his client's secrets, says, that the plea in justification was objected to because it is not averred that the plaintiff voluntarily offered himself; and whether voluntarily or not was traversable. "A voluntary offer," says the judge, "is here to be understood; and the meaning of the allegation is certain to a common intent, which is well enough in a plea. The plaintiff might have traversed the fact, and the defendant would have been bound, on the trial, to have shown the offer to be voluntary, for that is the gist of this part of the libel, and the intendment of the plea. The allegation in the plea can have no other reasonable intendment. It is the language of the libel itself, which is admitted to mean a voluntary offer; and, according to the just observation of Lord Chief Justice De Grey (Cowp. 687), a man cannot defame in one sense and justify in another." In Rex v. Horne, Cowp. 682, Chief Justice De Grey says that certainty to a common intent is sufficient in defence. In The King v. Mayor of Lyme Regis, 1 Doug. 158, Buller, J., says it is sufficient in a plea in bar; and in Co. Litt. 303a, Lord Coke says: "It is sufficient in bar, which is to defend the party or to excuse him." See, also, Long's Case, 5 Coke. 121a; Com. Dig. tit. "Pleader." c. 17; Heath, Max. 3; Spencer v. Southwick, 9 Johns. 314. But if a higher degree of certainty be required, viz., certainty to a certain intent in general, I think the plea has that certainty. In The King v. Mayor of Lyme Regis, 1 Doug. 158,

Judge Buller says. "Certainty to a certain intent in general" "means what, upon a fair and reasonable construction, may be called certain without recurring to possible facts which do not appear; and is what is required in declarations, replications, and indictments, in the charge or accusation, and in returns to writs of mandamus." "The charge must contain such a description of the crime, &c., that, without intending any thing but what appears, the defendant may know what he is to answer, and what is intended to be proved; in order that the jury may be warranted in their verdict, and the court in the judgment they are to give." Rex v. Horne, Cowp. 682; 1 Chit. 237. It is true, that "it is a maxim in pleading that every thing should be taken most strongly against the party pleading; or, rather, that if the words be equivocal, they shall be taken most strongly against the party pleading them; for it is to be intended that every person states his case as favorably to himself as possible. But the language of the pleading is to have a reasonable intendment and construction; and, where an expression is capable of different meanings, that shall be taken which will support the declaration, &c., and not the other which would defeat it." Wyat v. Aland, 1 Salk. 325; The King v. Stevens, 5 East, 257; Amhurst v. Skynner, 12 East, 270; Woolnoth v. Meadows, 5 East, 463.

The imputation in the libel is, that the plaintiff maliciously devised slanderous accusations against Mr. Adams, and that the plaintiff was guilty of moral obliquity. The fourth plea, also, I think is good, for the same reasons for which I think the third is good. It contains a good justification of the charge of moral obliquity, which is all it professes to justify. The fifth plea is to the second class of words in the first count; beginning "It is observable," and ending "for him to explain." These words charge Mr. Kerr with making certain alterations in the warrant of distress, which, in themselves. appear to be innocent; but which are said in the libel to be "not altogether immaterial to the consciousness of Mr. Kerr," thereby insinuating some improper motive not explained by innuendo. They also charge him, in general terms, with "other alterations of other documents," which it is said "it will not, perhaps, be so easy for him to explain;" thereby also insinuating improper motives not explained by innuendo. I am very doubtful whether these words, without an innuendo explaining the offensive meaning of which the plaintiff complains, are actionable. Starkie, 75; Rex v. Horne. Cowp. 683; Woolnoth v. Meadows, 5 East, 463. If they are actionable, I think the justification sufficient. The sixth plea is to so much of the last-mentioned class of words as charges the plaintiff with "other alterations." It reiterates that part of the third plea which relates to the alteration of Mrs. Moulton's note and Mr. Moulder's

check. I think it is a good justification of what it purports to justify. The eighth plea is to the third class of words in the first count; beginning "This letter," and ending "indignation at the bank;" comprehending that part of the supposed libel which charges the plaintiff with deceiving Mr. Adams, by means of the letter to Mrs. Adams. This plea affirms the literal truth of the words, and adds the following averment:—"And the defendant in fact says that the plaintiff, by means of the said letter and note, practised a fraud and deception upon the said J. Q. Adams, by drawing him in to indorse a note for three months' rent more than was included in the warrant of distress, contrary to the known intent, purpose, and object of the indorsement so made by him, the said J. Q. Adams." I think this plea is sufficient, as it avers a direct fraud and deception practised by the plaintiff upon Mr. Adams. This could not be, unless it were done with a fraudulent intent. The averment is certain to a certain intent in general. To require an additional averment, that the fraud and deception were practised with a fraudulent intent, would be almost tautology; and would be a requisition of certainty to a certain intent in every particular, which, if ever required, is only necessary in estoppels. The tenth plea is to the fourth class of words in the first count; beginning "We now come," and ending "the terms and conditions of the note." These words are capable of the meaning attributed to them by the plaintiff in his declaration. They may amount to a charge of forgery. The question then is, whether the plea charges the plaintiff with that offence, in terms so precise as to amount to certainty to a certain intent in general, in the sense in which this phrase is used in juridical language. In The King v. Mayor of Lyme Regis, 1 Doug. 158, Buller, J., in speaking of that kind of certainty, says:—"I take it to mean what, upon a fair and reasonable construction, may be called certain without recurring to possible facts which do not appear." In The King v. Stevens, 5 East. 257, Lord Ellenborough says:—"But if it (the matter pleaded,) be clearly capable of different meanings, it does not appear to clash with any rule of construction, applied even to criminal proceedings, to construe it in that sense in which the party, framing the criminal charge, must be understood to have used it if he intended his charge should be consistent with itself; and this, at least, we may suppose him to have intended." And in page 259 he says:—"Every indictment or information ought to contain a complete description of such facts and circumstances as constitute the crime, without inconsistency or repugnancy; and except in particular cases, where precise technical expressions are required to be used, there is no rule that other words shall be employed, than such as are in ordinary use; or that in indictments, or other pleadings, a different sense is to be put

upon them from what they bear in ordinary acceptation." "If the sense be clear, nice exceptions ought not to be regarded."

These cases show a relaxation, in some degree, of the severity of the rule as laid down in 2 Hawk. P. C. c. 25, § 60, "That in an indictment, nothing material should be taken by intendment or implication." Indeed, Hawkins himself, after stating several cases in which exceptions to indictments have been overruled, says, in section 61:—"But I cannot find any general rule, whereby it may be known in what cases an exception of this kind shall be taken to be so over nice that the court will not regard it. All that I shall add on this head is this, that as, on the one hand, the law will not suffer any man to be condemned of any crime, whereof the jury has not expressly found him guilty, by any argument or implication from what they have so found; so, on the other hand, it will not suffer a criminal to escape on so trifling an exception, which it would be absurd and ridiculous to take notice of; for nimia subtilitas in jure reprobatur." "But the judgment hereof cannot but be, in a great measure, left to the discretion of the judges, who, from the circumstances of each particular case, the comparison of precedents, and the plain sense of the thing, seem always to have endeavored to go within these rules as nearly as possible." In The King v. Aylett, 1 Term R. 69, Lord Mansfield said:—"It is necessary, in every crime, that the indictment charge it with certainty and precision, to be understood by everybody, alleging all the requisites which constitute the offence; but every crime stands on its own circumstances, and has peculiar rules." 1 Chit. Cr. Law, 174. "It has been holden that the statement, that the defendant 'knowingly' committed any act, is a sufficient averment of knowledge." 2 Strange, 904, note 1; 1 Chit. Cr. Law, 241. In Rex v. Lawley, 2 Strange, 904, an averment that the defendant, knowing that C. had been indicted for forgery, did so and so, is a sufficient averment that C. had been indicted; and an averment that the defendant, knowing Sir T. A. to have conspired the death of the king, is a sufficient averment that Sir T. A. did so conspire. See, also, The King v. Fuller, 1 Bos. & P. 186, that a charge of endeavoring to seduce a soldier is equivalent to an averment that he knew he was a soldier. In Rex v. Woodfall, 5 Burrows, 2667, Lord Mansfield said:—"That where an act, in itself indifferent, if done with a particular intent, becomes criminal, there the intent must be proved and found; but where the act is in itself unlawful, the proof of justification or excuse lies on the defendant, and, in failure thereof, the law implies a criminal intent." And in Rex v. Horne, Cowp. 679, he said:—"An indictment or information must charge what in law constitutes a crime, with such certainty as must be proved; but that certainty may arise from a necessary inference, in the manner settled

in Rex v. Lawley, in Strange." 2 Strange, 904. All the certainty required is, that the plea shall contain a clear and distinct statement of the facts which constitute the ground of defence, so that they may be understood by the party who is to answer them, by the jury who are to ascertain the truth of the allegations, and by the court who are to give judgment. Rex v. Horne, Cowp. 682.

The plaintiff avers, that the defendant meant by these words to charge him with forgery. The court has decided that they are capable of that meaning, and that the jury might find that the plaintiff used them in that sense. The defendant, therefore, must justify them in that sense, by showing facts, either by direct averment or necessary inference, which amount in law to forgery. The facts averred are, that the plaintiff did falsely, and fraudulently, and unlawfully alter the note, so as materially to change the terms and conditions thereof. The act thus stated is an act unlawful in itself; and, therefore, according to the doctrine of Lord Mansfield in Rex v. Woodfall, 5 Burrows, 2667, the law implies a criminal intent. If the act be a crime, can it be any other crime than forgery? If a man, under the circumstances stated in this plea, falsely, fraudulently, and unlawfully alter a note, so as materially to change its terms, the criminal intent is necessarily inferred, and he is in law guilty of forgery. The act could not be fraudulently done without a fraudulent intent. Hawkins (1 P. C. bk. 1, c. 21, § 1) defines forgery, at common law, to be "an offence in falsely and fraudulently making or altering any matter of record, or any other authentic matter of a public nature." And in Rex v. Ward, 2 Ld. Raym. 1466, the same definition is extended to any writing, by the false making, or altering of which a person may be prejudiced; and from the same chapter in Hawkins (section 4) it appears that if the holder of a note alter it to a less sum, "it is forgery, if, by the circumstances of the case, it should appear to have been done with an eye of gaining an advantage to the party himself, or of prejudicing a third person." "It is also holden that such an alteration, even without these circumstances, is a misdemeanor though it be no forgery."

At common law it is sufficient, in an indictment for forgery, to say "forged and counterfeited," without adding "falsely," which the term "forged" sufficiently implies; nor is it necessary to add the term "unlawfully," since the offence is manifestly illegal. 2 Rolle, Abr. 82, pl. 4; 3 Chit. Cr. Law, 1042. "The very essence of forgery is an intent to defraud." Id. 1039. "An intent to defraud (as we have seen it is essential to the offence,) must be laid in the indictment, and strictly proved in evidence." Id. 1042. But it is in no case necessary that an actual injury should result from the offence. Rex v. Ward, 2 Ld. Raym. 1461; 2 Strange, 747; Rex v. Crooke, 2 Strange, 901; Rex v. Goate, 1 Ld.

Raym. 737. In Archbold's Criminal Pleading (page 189) it is said:—"The intent to defraud is described as an ingredient of the offence, in all the statutes upon the subject of forgery, and consequently must be charged in the indictment." And again, in page 205, Mr. Archbold says:—"The forging and counterfeiting of any writing, with a fraudulent intent whereby another may be prejudiced, is a misdemeanor at common law, in all cases where it has not been made felony by statute; thus counterfeiting a letter of credit (1 Strange, 12); a bill of lading (1 Salk. 342); a debtor's discharge (2 East, P. C. 862); and the like, are forgeries at common law." And this seems to be the result of all the books and cases upon the subject; so that this tenth plea avers all the facts which constitute the crime of forgery at common law.

The dictum of Mr. Starkie (on Slander, p. 340), "that the same degree of certainty and precision are required in this plea, as are requisite in an indictment or information," is not supported by the cases which he cites to confirm it. In the case of Wyld v. Cookman, cited from Cro. Eliz. 492, the words were, "Thou wast forsworn in such a leet on such a day." "The plea was that the plaintiff was sworn, with others, before the steward, to present, &c.; and that they presented such a ditch not scowered, ad nocumentum, &c., which was false, and so justifies; and it was thereupon demurred; and now moved that this was not any plea, because it is not said that they knew it, of their proper notice, to be false; otherwise it is not perjury; for they make their presentment upon evidence, which, if they believe, and present falsely accordingly, it is not any perjury. Gawdy and Fenner—It is properly and commonly intended that they should present fault of their own knowledge; and if they presented upon evidence, the plaintiff ought to show it by replication. Popham—But a man may not justify by intendment; but it ought to be precisely alleged." The case went off upon another point, viz., that the ditch was not within the leet, so that the case is of no authority; and, as far as it goes, there were two judges to one against the point which it is cited to support. The only other case cited by Mr. Starkie upon this point, is from Brooke, Abridgment, Action sur Case, pl. 3; which, translated, is in these words, viz.: "Note action on the case for calling the plaintiff 'thief,' and that he stole two sheep of I. S. The defendant says that the plaintiff did steal the sheep, wherefore he called him 'thief,' as well he might; and good per cur. without expressing the value; for if they were not worth 12d. and so only petit larceny, and not felony of death, yet this is felony in its nature; and the same law (28 Hen. VIII.) between Austin and Thomas Lewis, for calling him false and perjured, he justified for this, that the plaintiff was perjured in the star-chamber in such a matter, &c.; and good plea per cur. 27 Hen. VIII. pl. 22."

In an indictment, it would have been necessary to set forth the value of the sheep; but the court held it not necessary in a plea of justification; so that the decision is directly contrary to the dictum of Mr. Starkie, if that dictum is to be understood to mean that every thing must be averred in a plea in justification which it would be necessary to aver in an indictment for the same offence. But I do not understand Mr. Starkie as carrying the doctrine to that extent. I think he only meant to say, that where the libel charges the plaintiff with a crime by its technical name (murder, for instance), the plea must charge the fact with as much certainty and precision as in an indictment. But even to this extent his authorities fail him. But, if the offence must be stated with as much precision in a plea as in an indictment, it is holden in 1 Curwood's Hawk. P. C. bk. 1, c. 21, § 27, that "in an indictment for forgery it is sufficient to aver a general intent to defraud, without setting out the particular manner by which the fraud was to be effected; for it is no answer to the charge of forgery, to say that there was no special intent to defraud any particular person; and, if a particular person be named, a description of him to a common intent, is all that is required." Powell's Case, 1 Leach, Crown Cas. 77, 78, notes; Lovell's Case, Id. 248; Palmer's Case, Id. 352. Chitty (3 Cr. Law, p. 1036) says: "And, indeed, it seems that it is not necessary to constitute forgery, that there should be an intent to defraud any particular person; and a general intent to defraud will suffice." And in Tatlock v. Harris, 3 Term R. 176, it is said, that "if a person does an act, the probable consequence of which is to defraud, that constitutes a fraudulent intent in the eye of the law." In page 342, Mr. Starkie says, "The matter alleged in justification, to be true, must, in every respect, correspond with the imputation complained of in the declaration." Here the imputation is, that the plaintiff committed forgery. The plea charges all the facts which constitute forgery. The matter alleged in justification, therefore, corresponds, in every respect, with the imputation.

Upon the whole, I am of opinion that the tenth plea, charging that the plaintiff did falsely, fraudulently, and unlawfully, alter the note so as materially to change the terms and conditions thereof, is a good plea in justification of the charge of forgery, without any further averment of a fraudulent intent, or of an intention to injure any person in particular. I think the twelfth plea good, for the like reason. It is to the first set of words in the second count, which are these. "He altered the note signed by Mrs. Moulton, and indorsed by Mr. Adams, falsely and fraudulently, so as to change the terms and conditions thereof and therein committed forgery. He falsely made and forged an alteration in the note signed by Mrs. Moulton, and indorsed by Mr. Adams, so as to change

the terms and conditions of the note." The plea avers that the plaintiff did falsely and fraudulently forge and make an alteration in the note so as to change its terms and conditions in this, to wit: (&c., as in the tenth plea). I think it avers all the facts necessary to constitute the charge of forgery. The fourteenth plea is to the second set of words in the second count, which is the same as the fourth set in the first count, to which the tenth plea is an answer. This fourteenth plea is exactly like the tenth, and is good for the same reasons. I am, therefore, of opinion that judgment should be given for the defendant upon the demurrer to all the pleas.

THRUSTON, Circuit Judge, concurred in this judgment.

MORSELL, Circuit Judge, was of opinion that the tenth and fourteenth pleas ought to have averred an intent to injure Mr. Adams.

The plaintiff, then, by leave of the court, withdrew his demurrer to all the pleas, except the original plea of justification, and joined issue upon the facts stated in the fourteenth plea in justification, which came on for trial on the 9th of January, 1828, and on the 15th the jury retired to consider of their verdict, and were out until the 18th, when, not having agreed, and the court being about to close the session, the parties agreed to withdraw a juror, and to continue the cause to the next term, when it was again continued to December term, 1828, when it was compromised by the parties; the defendant confessing judgment for one cent damages, and admitting that the plaintiff in the alteration of the note, and the other acts alluded to in the libel, was not actuated by any criminal intent, or by an intention to defraud any person. Some instructions and opinions were given during the trial, and bills of exception were taken, but they are not deemed worth reporting.